NOT RECOMMENDED FOR PUBLICATION

File Name: 26a0314n.06

No. 25-5924

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td></td><td></td></tr>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>CHRISTOPHER DEMARCUS BLUE,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td></tr>
</table>

**FILED**

Jul 17, 2026

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: KETHLEDGE, NALBANDIAN, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Christopher Blue pled guilty to 13 counts of an indictment covering assorted drug-trafficking and firearms charges. Blue's plea agreement preserved his right to challenge the district court's failure to suppress evidence recovered at two Memphis-area residences. He now appeals on that basis. Because Blue's arguments for suppression lack merit, we affirm.

I

A

In May 2023, officers received a tip from a confidential source ("CS") that Blue was participating in drug-trafficking activity. Blue is a convicted felon. And he was on probation for a prior offense at the time.

Based on the information from the CS, officers began surveilling Blue. Months of surveillance efforts placed Blue at four different Memphis-area residences relevant to this appeal. Blue was seen selling drugs (including in a series of controlled buys) and possessing weapons at two locations—1550 South Highland Street and 1712 Green Dolphin Street. And he was observed parking his vehicle and staying overnight on multiple occasions at two others—1546 South Highland Street and 3218 Estes Street.

This information led officers to seek warrants to search the four properties for evidence related to drug-trafficking offenses. In mid-September 2023, Detective Samuel Pair swore out four affidavits—one for each property—and presented them as a package to a criminal court judge. All agree that the judge authorized the warrants on the same day "one after the other." Suppression Ruling Tr., R.50, PageID 291. Officers executed the warrants at all four properties the next day.

Below we specify the content of the warrant affidavits, as well as the relevant items recovered, relating to each searched property. But all affidavits had a few items in common. They began by stating that a reliable CS—responsible for over 15 felony arrests—had provided information that Blue was selling narcotics within Memphis and Shelby County, Tennessee. All affidavits further represented that officers, using the CS, had conducted four probable-cause buys of marijuana from Blue—including one buy that had taken place within the five days before the affidavits' submission. All affidavits reported that Blue was a felon previously convicted of drug and firearms offenses. And all affidavits represented that, in Detective Pair's experience, distributors of illegal narcotics keep "drug ledgers, drug proceeds, drug paraphernalia and electronic storage devices within their place of residence." *E.g.*, 1550 S. Highland Aff., R.21-1, PageID 49.

*1550 South Highland Street.*  Detective Pair's affidavit reported that Blue had held active utilities at this property for over two years.  In addition, officers had performed "countless" hours of surveillance, during which they observed Blue enter and exit the property, as well as stay inside the property for "long periods of time."  *Id.*  During Blue's presence at the property, numerous other individuals would enter or pull up to the property, stay for just a few moments, then depart.  Detective Pair stated that, in his experience, such activity was consistent with drug sales.  Further, Detective Pair explained that the CS had seen Blue conducting drug sales with firearms present at the property.  And according to the CS, Blue stated that he parked his vehicle—a silver/tan convertible BMW—at his mother's house next door so that the police wouldn't seize it.  Finally, detectives conducted two controlled buys of marijuana from Blue at this location.

During the search of this property, officers recovered digital scales, handgun and shotgun magazines, and ammunition.

*1546 South Highland Street.*  Detective Pair's affidavit indicated that Blue had long listed this property as his primary address on police reports and an identification card.  And Blue's mother held active utilities at the location.  The affidavit further represented that officers had observed Blue park his vehicle at this property before walking to 1550 South Highland and staying there for long periods of time.  According to the affidavit, officers learned that Blue parked his car behind 1546 South Highland to elude law enforcement while he spent time at 1550 South Highland.  The CS did not enter 1546 South Highland, nor did Detective Pair report any activity at this property consistent with drug trafficking.

Officers' search of this property revealed 51 oxycodone pills and a loaded 9mm handgun.  A search of a Chevrolet Impala parked in the property's driveway led officers to recover 5.4

pounds of marijuana, 346.7 grams of fentanyl, an ecstasy pill, a credit card embossing machine, two shotguns, three rifles, and three pistols. Most of the firearms were loaded.

*1712 Green Dolphin Street*. This affidavit mirrored the affidavit for 1550 South Highland. According to Detective Pair, the CS reported seeing Blue conduct drug sales at this property with firearms present. Surveillance, too, showed Blue entering and remaining at the property, as well as short-term visitor traffic consistent with drug-sale activity. And through the CS, officers conducted two controlled buys of marijuana from Blue at this property.

Officers searched this property and recovered digital scales, two cell phones, and around one gram of fentanyl in a crossover-utility vehicle. That vehicle had been reported as stolen and was parked in the property's rear.

*3218 Estes Street*. At this property, officers had seen Blue entering and exiting through the carport door, taking a dog from the property on walks, and parking his BMW and staying at the property overnight. Officers also observed Blue leave the property in his BMW and drive to 1546 South Highland Street. The CS did not enter this property, nor did Detective Pair report any activity at this property consistent with drug trafficking.

Officers' search of this property revealed around $1,800 in cash, a marijuana edible, 14 grams of marijuana, and three alprazolam pills. Officers also discovered a pistol and ammunition located in Blue's BMW underneath a seat.

B

A grand jury returned an indictment charging Blue with 22 counts of drug- and firearms-related offenses.

After initially pleading not guilty, Blue filed a motion to suppress the fruits of the officers' searches. Then, as now, Blue conceded that officers had probable cause to search 1550 South

Highland Street and 1712 Green Dolphin Street—where he had been observed making drug sales and possessing firearms. But Blue contended that officers lacked probable cause to believe that the two remaining properties, 1546 South Highland Street and 3218 Estes Street, would contain evidence of any crimes. That was so, Blue argued, because officers had no information that criminal activity had occurred at those properties; instead, officers had only seen Blue entering and exiting those locations to perform "normal" tasks of daily life. Mot. to Suppress, R.21, PageID 38.

Following a suppression hearing, the district court denied Blue's motion. Though deeming the question "close," the district court accepted Blue's argument that officers lacked probable cause to search 1546 South Highland Street and 3218 Estes Street. Suppression Ruling Tr., R.50, PageID 288. But the district court concluded that the good-faith exception to the warrant requirement applied. The district court explained that Detective Pair had presented all affidavits together to the authorizing judge. The judge in turn signed the warrants within a five-minute span, suggesting that they were considered together. And because two of the affidavits contained ample details to support probable cause, Detective Pair would have reasonably believed that the warrants were properly issued based on information that "strongly implicate[d]" Blue in ongoing drug trafficking. *Id.* at PageID 291.

Blue pled guilty to 13 counts of the indictment and was sentenced to 138 months' imprisonment. But Blue's plea reserved his right to appeal the denial of his suppression motion. *See* Fed. R. Crim. P. 11(a)(2). This appeal followed.

II

The Fourth Amendment requires "probable cause" for "Warrants" to "issue." U.S. Const. amend. IV. Violations of that rule can result in courts' suppressing evidence. But suppression

5

isn't automatic; the Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)).

Relevant here, *Leon* directs courts to examine whether to apply "the good-faith exception" to the exclusionary rule following an officer's warrant-based search. *Id.* at 924. The exception rejects a role for suppression when an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues" was "objectively reasonable." *Id.* at 922. By contrast, suppression remains appropriate if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (citation omitted). Such would be the case if, among other defects, the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted).

Whether the good-faith exception applies is a legal question we review de novo. *United States v. Long*, 155 F.4th 829, 834 (6th Cir. 2025). To the extent the district court's analysis turns on factual findings, we review those for clear error. *Id.*

Applying that framework, we agree with the district court that the good-faith exception forecloses suppression. So we start and end there without addressing other aspects of the district court's reasoning.

Blue's principal argument is that officers did not act in good-faith reliance on the warrants for 1546 South Highland Street and 3218 Estes Street. The problem, Blue says, is that the respective affidavits supporting each property's search were so "lacking in indicia of probable cause" that no officer could have reasonably suspected either property as the site of any criminal

activity or evidence. Blue Br. 14. From there, Blue contends that the officers' searches of these properties were outside the scope of the good-faith exception—even if the accompanying affidavits established sufficient probable cause to search the remaining two locations.

We disagree. For starters, Blue's argument stems from the faulty premise that this Court must assess each warrant in isolation when applying the good-faith exception. But as we've instructed, "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *United States v. Reed*, 993 F.3d 441, 453 (6th Cir. 2021) (citation omitted). That may include "sworn facts in the other affidavits" reviewed by the magistrate judge at the time of the challenged warrant's issuance. *Id.* Here, Blue does not contest the district court's factual finding that Detective Pair presented all four affidavits together to the authorizing judge. Nor does he dispute that the authorizing judge reviewed the package together within a five-minute span. As the district court concluded, those facts indicate that all affidavit information about Blue's drug dealing was known to Detective Pair and "revealed to the issuing judge." Suppression Ruling Tr., R.50, PageID 291-92.

Applying the good-faith exception thus turns on how a reasonable officer would understand the affidavits together. Specifically, we ask if it was reasonable for officers to believe that the information across all four affidavits established probable cause to search not only 1712 Green Dolphin Street and 1550 South Highland Street, where officers observed Blue engaging in drug-related activities, but also 1546 South Highland Street and 3218 Estes Street, where Blue engaged in activities consistent with residency. It was.

Probable cause "exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United*

*States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (citation omitted). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (citation omitted). For purposes of the good-faith exception, a "minimally sufficient" nexus is enough. *Reed*, 993 F.3d at 450 (citation omitted). A "minimally sufficient" nexus exists where "there is some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *Id.* at 451 (citation omitted).

In the context of drug trafficking, this Court has made the "common sense" observation, *Long*, 155 F.4th at 835, that "evidence is likely to be found where the dealers live," *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (citation omitted). So "a probable cause nexus exists when an affidavit establishes two things: one, that the address to be searched is the home of the suspect, and, two, that the suspect is engaging in continual and ongoing drug trafficking operations." *Long*, 155 F.4th at 835. That is so "[e]ven if no direct evidence ties drug dealing to a home" or otherwise shows "wrongdoing occurring at that residence." *United States v. Simmons*, 129 F.4th 382, 387 (6th Cir. 2025) (citation omitted). When an officer's affidavit demonstrates "continual and ongoing drug trafficking (albeit from another house)" by a suspected drug dealer, there is "sufficient circumstantial evidence to establish probable cause to search his primary residence." *Long*, 155 F.4th at 835.

Given those principles, Detective Pair's affidavits at the very least cleared the "minimally sufficient" nexus to trigger the good-faith exception. *Reed*, 993 F.3d at 450 (citation omitted). Start with their discussion of Blue's residency at the properties in question. Blue had long used 1546 South Highland Street as his home address. And officers had seen Blue park his car there for sustained periods, as well as enter the residence through the carport door. On top of that,

8

officers had observed Blue walking directly from 1546 South Highland Street to the next-door location of his suspected drug dealing at 1550 South Highland Street. As for 3218 Estes Street, officers reported that Blue routinely parked his BMW and stayed at the property overnight; they'd also observed Blue walk a dog from the home around the neighborhood and then place the dog back inside. And officers had seen Blue drive directly from 3218 Estes Street to 1546 South Highland Street—the property adjacent to his known drug-dealing location.

The affidavits also supported the conclusion that Blue was "engaging in continual and ongoing drug trafficking operations." *Long*, 155 F.4th at 835. Detective Pair included eyewitness accounts from a reliable CS about Blue's "multiple" drug sales, reported "countless hours" of premises surveillance consistent with Blue's selling drugs, and detailed four probable-cause buys of marijuana from Blue—including one that occurred mere days before the affidavits' submission. *E.g.*, 1550 S. Highland Aff., R.21-1, PageID 49.

In short, it was reasonable for officers to believe that all of the information known to the authorizing judge supported probable cause to search 1546 South Highland Street and 3218 Estes Street. Contra Blue's contention, that conclusion follows even if the affidavits did not establish that Blue engaged in drug-trafficking activities at those locations. *See, e.g.*, *Reed*, 993 F.3d at 451-52. And Blue does not press any other reason for declining to apply the good-faith exception. So the district court did not err in denying Blue's suppression motion.

\* \* \*

We affirm the district court's denial of Blue's motion to suppress.